IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL ACTION NO. 3:22-CR-00034-KDB-SCR

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| v. | )     **ORDER** |
| DONALD BOOKER, | )<br>) |
| Defendant. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on the Defendant's Motion for a Judgment of Acquittal under Rule 29 of the Federal Rules of Criminal Procedure. (Doc. No. 109). The Defendant also seeks to set aside the jury verdicts under Rule 33. *Id*. The Court has reviewed the Motion, the parties' briefs and exhibits, and other relevant pleadings of record. For the reasons discussed below, the Court will deny the Motion.

**I.    BACKGROUND**

On February 15, 2022, the Defendant was indicted and charged with 1) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; 2) multiple violations of the Anti-Kickback Statute, in violation of 42 U.S.C. § 1320a-7b; 3) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); and 4) money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). *See* Doc. No. 1. The United States filed a Superseding Indictment on December 14, 2022, which removed unnecessary allegations, narrowed the temporal scope of the charges, and identified a previously unnamed coconspirator. *See* Doc. No. 52. The nature of the charges against the Defendant did not change. *Id*. After a six-day trial beginning on January 3, 2023, in which the Defendant represented himself, the jury returned a guilty verdict on all counts. The

1

Defendant, through counsel, seeks a judgment of acquittal and to set aside the jury verdicts. The matter is now ripe for the Court's consideration.

## II. LEGAL STANDARD

Rule 29 of the Federal Rules of Criminal Procedure states that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "A defendant may move for a judgment of acquittal . . . within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." *Id*. "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." *Id*.

"A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 144, 106 S. Ct. 1745, 90 L. Ed. 2d 116 (1986)). "The test for deciding a motion for a judgment of acquittal is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982); *see also United States v. Rafiekian*, 68 F.4th 177 (4th Cir. 2023). "[I]n the context of a criminal action, substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996). Moreover, the jury, not the reviewing court, assesses the credibility of the witnesses and resolves any conflicts in the evidence presented. *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997). Consequently, a court must deny a defendant's Rule 29 motion and accept the jury's verdict if, "after viewing the

evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); *see also Rafiekian*, 68 F.4th 177, ___ ("[a] district court may order a new trial on the defendant's motion 'if the interest of justice so requires.'"). A district court "should exercise its discretion to grant a new trial sparingly," and "should do so only when the evidence weighs heavily against the verdict," *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (citation omitted), or when substantial prejudice has occurred, *United States v. Jones*, 542 F.2d 186, 211 (4th Cir. 1976). Merely believing that the case could have come out the other way is not enough to warrant a new trial. *Rafiekian*, 68 F.4th 177, ___. Because determining witness credibility and weighing conflicting evidence are the responsibility of the jury, the standard for forsaking a jury verdict in favor of a new trial is demanding. *Id.*; *United States v. Millender*, 970 F.3d 523, 532 (4th Cir. 2020).

### III. DISCUSSION

The Defendant makes several arguments in support of his Motion. The Defendant argues that: (1) the United States' money laundering theory violates the Merger Doctrine; (2) the money laundering conspiracy count failed to allege a criminal offense; (3) the introduction of a redacted portion of the administrative law judge's order violated the Confrontation Clause and the Federal Rules of Evidence; (4) the Safe Harbor Provision of the Anti-Kickback Statute violates the Nondelegation Doctrine; (5) the Court wrongly denied the Defendant the opportunity to recross

3

Richard Graves; and (6) the Court wrongly denied the Defendant's Motion for a continuance. The Court will address each argument in turn.

1) Merger Doctrine

The Defendant first argues that the United States' money laundering theory violates the merger doctrine under *United States v. Santos*. Specifically, he contends that the United States alleged "a theory of concealment money laundering such that the money laundering is part and parcel of the health care fraud." The United States responds that: (1) the merger doctrine does not apply; and (2) even if the merger doctrine applies, no merger occurred.

In *Santos*, the Supreme Court considered whether the term "proceeds" meant "receipts" or "profits." *See United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008) (plurality opinion). Santos was convicted of operating an illegal gambling business and of laundering the proceeds of that business. The district court vacated Santos's money laundering convictions under § 1956(a)(1)(A)(i) and § 1956(h), finding that "the proceeds admittedly used by Santos to pay winners and couriers could only have been gross proceeds," rather than net proceeds. *See United States v. Santos*, 342 F.Supp.2d 781, 799 (N.D.Ind.2004), aff'd, 461 F.3d 886 (7th Cir.2006). The Supreme Court affirmed in a 4–1–4 decision. Justice Scalia, writing for the plurality, explained, if "proceeds" meant "gross receipts," "nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery." *Santos,* 553 U.S. at 515, 128 S.Ct. 2020 (plurality opinion). "Since few lotteries, if any, will not pay their winners, the statute criminalizing illegal lotteries, 18 U.S.C. § 1955, would 'merge' with the money-laundering statute." *Id.* at 515–16, 128 S.Ct. 2020. Justice Scalia added that:

4

> For a host of predicate crimes, merger would depend on the manner and timing of payment for the expenses associated with the commission of the crime. Few crimes are entirely free of cost, and costs are not always paid in advance. Anyone who pays for the costs of a crime with its proceeds—for example, the felon who uses the stolen money to pay for the rented getaway car—would violate the money-laundering statute. And any wealth-acquiring crime with multiple participants would become money laundering when the initial recipient of the wealth gives his confederates their shares. Generally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else, would merge with money laundering.

*Id*. at 516, 128 S.Ct. 2020 (footnote omitted). Justice Stevens agreed, asserting that "[a]llowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy." *Id*. at 527, 128 S.Ct. 2020 (Stevens, J., concurring)

In light of *Santos*, the Fourth Circuit has held when illegal activity includes money transactions to pay for the costs of the illegal activity, a merger problem can occur if the United States uses those transactions to prosecute a defendant for money laundering. *See United States v. Halstead*, 634 F.3d 270, 279 (4th Cir. 2011). Put another way, a defendant cannot be convicted of money laundering for paying the "essential expenses of operating the underlying crime." *United States v. Cloud*, 680 F.3d 396, 406 (4th Cir. 2012) (*citing Halstead* at 279 (internal citation omitted)). At the same time, when the transactions of the predicate offense are different from the transactions prosecuted as money laundering, a merger problem does not arise. *Halstead*, 634 F.3d at 279- 280.

Here, no merger of offenses took place. The Defendant conspired to commit health care fraud when he submitted or caused to be submitted false claims to Medicaid for urine drug tests that were medically unnecessary and procured through promises of illegal remuneration. The health care fraud offense was complete the moment he received payment on those false claims.

5

After completing the health care fraud, the Defendant then concealed his conduct by entering into fraudulent contracts, paying fake invoices for services not rendered, directing false accounting and memo lines on checks, and structuring transactions to conceal the nature of the kickbacks. So, the conduct underlying the conspiracy to commit health care fraud and money laundering counts were distinct.

This conclusion is supported by the Fourth Circuit's decision in *United States v. Halstead.* In *Halstead*, the defendant committed health care fraud when he submitted fraudulent claims to health care providers. *Halstead*, 634 F.3d at 280. After receiving payment on those false claims, the defendant then separately committed promotional money laundering when he transferred the fraud proceeds between multiple businesses. *Id.* The Fourth Circuit held that because the money laundering involved separate conduct no merger occurred, and his money laundering conviction was upheld. *Id.* at 281. Similarly, in this case the Defendant engaged in separate conduct after conspiring to commit health care fraud that established the money laundering convictions. Entering into fraudulent contracts, paying fake invoices for services not rendered, and structuring transactions to conceal the nature of the kickbacks were not "part and parcel" of the health care fraud. Rather, this conduct was unique to the money laundering counts and unnecessary to the health care fraud. In sum, the conspiracy to commit health care fraud and the money laundering counts involved separate conduct and therefore did not merge.

2) Failure to Allege Criminal Offense

The Defendant contends that the Superseding Indictment fails to allege conduct that violates 18 U.S.C. § 1956(a)(1)(B)(i) because none of the transactions disguised the origin of the money; rather, they merely disguised its purpose. The United States retorts that a rational jury could have found from the evidence that Defendant agreed to conceal at least the nature of the

6

fraud proceeds, which is sufficient under § 1956(a)(1)(B)(i) to state an offense. And the Court agrees.

> 18 U.S.C. § 1956(a)(1)(B)(i) states that:
>
> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall [violate this statute].

The plain text of this statute criminalizes efforts to conceal the source *or* the nature of the proceeds. *Id*. The United States undisputedly put on evidence that the Defendant designed the payments to appear to be legitimate employee payroll checks or legitimate payments to third-party contractors for services rendered to conceal the nature of the illegal kickbacks. This was sufficient for a rational jury to convict the Defendant under Section 1956. Furthermore, even if the United States were required to prove the Defendant sought to disguise the source of the money, a rational jury could have still convicted the Defendant. The evidence, taken in the light most favorable to the United States, established that the Defendant conspired to conceal the source of the illegal payments to prevent North Carolina Medicaid from discovering that the submitted claims were false. In short, the Superseding Indictment properly alleged criminal conduct under 18 U.S.C. § 1956(a)(1)(B)(i) and the conviction was supported by sufficient evidence admitted at trial.

       3) Admission of Administrative Decision

Defendant next argues that the Court abused its discretion in admitting Government Exhibit 263, a partially redacted order from an administrative law judge revoking United Youth Care Services' license, into evidence because it was hearsay, and its admission violated the Defendant's Sixth Amendment Rights under the Confrontation Clause. The United States answers that the administrative judge's order was introduced not for the truth of the matter but to establish the

7

"Defendant's notice and knowledge of the existence and illegality of the kickbacks; lack of mistake regarding the kickback and health care fraud schemes; participation in the charged conspiracy; and disproving Defendant's argument that the findings did not exist." *See* Doc. No. 111.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). In order to determine whether an out-of-court statement qualifies as inadmissible hearsay under this Rule, the district court must "identify[] the actual purpose for which a party is introducing" the statement at issue. *United States v. Gonzales-Flores*, 701 F.3d 112, 117 (4th Cir. 2012). A statement is not hearsay if it is offered for some purpose other than to prove the truth of the assertion contained within the statement. *See United States v. Pratt*, 239 F.3d 640, 644 (4th Cir. 2001).

The Sixth Amendment's Confrontation Clause guarantees the right of a criminal defendant "to be confronted with the witnesses against him." It forbids the introduction of out-of-court "testimonial" statements unless the witness is unavailable and the defendant has had the chance to cross-examine the witness previously. *See Crawford* v. *Washington*, 541 U. S. 36, 53–54 (2004). However, the Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted, such as to prove the defendant's knowledge. *See, e.g.*, *United States v. Parker*, 790 F.3d 550, 563 n.9 (4th Cir. 2015) (finding that notes were admissible to illustrate defendant's knowledge and participation in scheme rather than truth of matter asserted); *United States v. Cone*, 714 F.3d 197, 219 (4th Cir. 2013) (finding that evidence was not hearsay because it was offered only to establish notice); *United States v. Levy*, 335 F. App'x 324, 328 (4th Cir. 2009) (unpublished) (affirming admission of emails because they went

8

to intent, lack of mistake, and notice rather than truth of the matter asserted, citing *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004)).

In this case, the administrative order was not offered for the truth of its contents. Rather, it was offered to establish the Defendant's notice, knowledge, lack of mistake, and to rebut the Defendant's argument that there were no adverse findings against United Youth Care Services. During his examination of Richard Graves, Defendant continually elicited testimony, and *argued*, that there were several audits of United Youth Care Services, but the Defendant was never found to have paid illegal kickbacks or exploited its clients. (Tr. Vol. IV pp. 707-08, 724, 731.). As a result, on redirect examination the United States offered into evidence a short portion of the administrative order that found factual support for the conclusion that Defendant paid illegal kickbacks and exploited clients during the charged conspiracy. (Tr. Vol. IV pp. 796-800.) The Court had repeatedly warned the Defendant that although the United States did not intend to admit the administrative order, if he argued that there was no adverse finding against United Youth Care Services it would "open the door" to the United States to the order's admission. (Tr. Vol. I at pp. 96-100; Vol. III at pp. 691-92.) That is exactly what then happened. After the Defendant's argument that there was not an adverse administrative finding against him, the United States had a right to rebut this argument and establish the Defendant's notice and knowledge of this finding. Therefore, the introduction of the administrative order, which was not asserted for the truth of the matter, did not violate the Confrontation Clause or the rules of evidence.[1]

---

[1] In his reply, the Defendant asks the Court to consider whether the administrative order was admissible under Rules 401 and 403. *See* Doc. No. 113. Rule 401, which provides the threshold test for relevance, states that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 403 states, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time,

9

4) Nondelegation Doctrine

Defendant also challenges the validity of his conviction under 42 U.S.C. § 1320a-7b(b), the Anti-Kickback Statute. He argues that his conviction should be vacated because the "Safe Harbor Provision" of the Anti-Kickback Statute violates the nondelegation doctrine. The Safe Harbor Provision states that the Secretary of HHS may lay down by regulation payment practices to which the "illegal remunerations" prohibitions will not apply. 42 U.S.C. § 1320a-7b(b)(3)(E). So, the Safe Harbor Provision delegates to the Secretary the ability to remove certain types of conduct from the scope of the offense defined by statute. The nondelegation doctrine bars Congress from "transferring its legislative power to another branch of Government." *Gundy v. United States*, 139 S. Ct. 2116, 2121, 204 L. Ed. 2d 522 (Kagan, J.) (plurality opinion), *reh'g denied*, 140 S. Ct. 579, 205 L. Ed. 2d 378 (2019); *see also id.* at 2123 (citing U.S. Const. art. I, § 1). The Supreme Court has held that a Congressional delegation is constitutional "so long as Congress has set out an 'intelligible principle' to guide the delegee's exercise of authority." *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (plurality op.). "The requirement of an intelligible principle is not an exacting standard." *Granados v. Garland*, 17 F.4th 475, 480 (4th Cir. 2021).

Here, the delegation in the Safe Harbor provision is constitutional because Congress gave HHS an "intelligible principle" to limit the Secretary's discretion. *See United States v. Motamedi*, No. 20-10364, 2022 WL 101951, at *1 (9th Cir. Jan. 11, 2022), *cert. denied*, 214 L. Ed. 2d 30, 143 S. Ct. 116 (2022). "The Supreme Court has upheld the delegation of broad conferrals of authority

---

or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court has considered this argument and finds that the administrative order's probative value was not substantially outweighed by undue prejudice. As discussed above, the Defendant opened the door to admission of the administrative order and it was offered for a limited, and permissible, purpose (to establish the Defendant's knowledge). And while it certainly may have been prejudicial, it was not unfairly prejudicial.

10

to regulate 'in the public interest,' *National Broadcasting Co. v. United States*, 319 U.S. 190, 216 (1943), to set 'fair and equitable prices,' *Yakus v. United States*, 321 U.S. at 422, 427 (1944), to set 'just and reasonable rates,' *FPC v. Hope Natural Gas Co*., 320 U.S. 591 (1944), and to issue air quality standards that are 'requisite to protect the public health,' *Whitman v. American Trucking Association*, 531 U.S. 457 (2001)." *Id*. Congress gave the Secretary nine factors to consider when promulgating exceptions to the criminal prohibition under the Safe Harbor Provision. *See* 42 U.S.C. § 1320a-7d(a)(2). Those nine factors direct the Secretary to consider whether adding a safe harbor would improve the quality of healthcare in the United States overall by such things as improving "access to healthcare services," improving the "quality of health care services," and reducing incentives for doctors to "overutiliz[e]" healthcare services. *Id*. This directive is far more specific than the directives the Supreme Court has upheld in the face of nondelegation challenges. The Defendant is therefore not entitled to a judgment of acquittal on this basis.

   5) Denial of Recross of Richard Graves

The Defendant next argues that he is entitled to a new trial because the Court failed to allow him to recross witnesses when new evidence was introduced. While the Defendant contends that the scope of the redirect examination regularly went beyond the scope of cross-examination, he only specifically identifies the introduction of Government Exhibit 263, the adverse administrative finding against United Youth Care Services, through the testimony of Richard Graves, as impermissible absent recross.

When new evidence is opened on redirect examination, "the opposing party must be given the right of cross-examination on the new matter, but the privilege of recross-examination as to matters not covered on redirect examination lies within the trial court's discretion." *United States v. Blankenship*, 846 F.3d 663, 669 (4th Cir. 2017) (internal citations and quotations omitted). That

11

said, the denial of recross does not violate the Confrontation Clause when the defendant had the opportunity to recall the witness. *Id*. at 670; *see also United States v. Gibson*, 187 F.3d 631, at *5–6 (4th Cir. 1999) (table) (holding denial of recross harmless because defendant could recall witness); *United States v. Ross*, 33 F.3d 1507, 1518 (11th Cir. 1994) (same); *Hale v. United States*, 435 F.2d 737, 752 n.22 (5th Cir. 1970) (holding denial of recross did not violate Confrontation Clause when defendant had opportunity to recall witness). Even assuming the redirect examination of Graves went beyond the scope of cross-examination,[2] Graves was later recalled by the Defendant, where he could have (but chose not to) asked him about Government Exhibit 263. Accordingly, any alleged failure to allow recross of Graves was harmless and does not warrant a new trial.

      6) Denial of Motion for a Continuance

Lastly, the Defendant argues that the Court erred when it denied his sixth motion to continue because thirty-days had not run from the date of the Superseding Indictment. Yet this argument runs counter to the Supreme Court's holding in *United States v. Rojas-Contreras,* 474 U.S. 231 (1985). In *Rojas-Contreras*, the Supreme Court held that Speedy Trial Act's provision for a thirty-day trial preparation period does not restart upon the filing of a superseding indictment. *Id*. at 236. In that case, the defendant was tried about sixty-days after his initial appearance but only approximately twenty-eight-days after the filing of the superseding indictment. *Id*. In the same way, here the Defendant was tried only twenty days after the filing of the Superseding Indictment but almost eleven months after his initial appearance. *See* Doc. Nos. 5, 52, 74-80. Accordingly,

---

[2] The Court need not, and does not, determine whether the United States repeatedly went beyond the scope on redirect examination. That said, as noted above, it was the Defendant who raised the issue of the administrative findings on his cross-examination of Graves. Therefore, as to Graves, the redirect as to the administrative order was clearly within the scope of the Defendant's cross-examination.

12

because more than thirty-days had run since the Defendant's initial appearance the Speedy Trial Act did not require a continuance.

In addition, the Court did not abuse its discretion in denying the motion even absent a requirement under the Speedy Trial Act. The decision to grant a continuance is within the sound discretion of the court. *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995). A denial of a motion to continue is only wrongful where the denial prejudices the defendant. *Hoyte* at 1245. Here, the Court had continued this matter five times. *See* Doc. Nos. 10, 25, 34, 41, and 46. The Defendant, who was appearing *pro se* at the time, had not meaningfully participated in the pretrial process and had continually filed frivolous motions. Considering these circumstances, the Court determined that the Motion to Continue was filed merely to delay the trial. *See* Doc. No. 59. The Defendant has also offered no evidence of any prejudice that resulted from the denial of his motion. Therefore, the Court's denial of the Defendant's sixth motion to continue does not require a new trial.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion for a Judgment of Acquittal under Rule 29 of the Federal Rules of Criminal Procedure, (Doc. No. 109), is **DENIED**.

**SO ORDERED**

Signed: June 27, 2023

Kenneth D. Bell
United States District Judge